**WO**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| Pioneer Family Investments, LLC, | ) | CV 14-00594-PHX-PGR |
| Plaintiff, | ) ) | |
| v. | ) ) | **ORDER** |
| Shawn N. Lorusso, et al., | ) ) | |
| Defendants. | ) ) ) | |

Before the Court are the Motion to Dismiss filed by Defendants Shawn Lorusso, doing business as Selectric Systems ("Selectric"), and RLI Insurance Company ("RLI") (Doc. 7), and the Motion to Dismiss Counts VII, VIII, and IX, filed by Defendants Lutron Services Co., Inc., and Lutron Electronics Co., Inc. ("Lutron") (Doc. 10). The Court rules as follows.[1]

**BACKGROUND**

On November 12, 2013, Plaintiff Pioneer Family Investments ("Pioneer") filed a complaint in Maricopa County Superior Court. Pioneer filed a first amended complaint on February 20, 2014. ("FAC," Doc. 1, Ex. 1.) The FAC contains the following claims: Count I, breach of contract (against Selectric); Count II, breach of implied covenant of good faith and fair dealing (Selectric); Count III (breach of express and implied warranties (Selectric);

---

[1] Defendants' request for oral argument will be denied. The parties have fully briefed the issues and oral argument will not aid in the Court's decision. *See Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

1    Count IV, breach of express and implied warranties (Lutron); Count V, claim against license

2    bond (RLI); Count VI, unjust enrichment (Selectric and Lutron); Count VII, aftermarket

3    monopoly (Selectric and Lutron); Count VIII, price fixing (Selectric and Lutron); Count IX,

4    fraud (Selectric and Lutron). Defendants removed the case on March 20, 2014.

5          On June 1, 2010, Pioneer contracted with Selectric to install a Lutron lighting control

6    system in a private residence for $54,166.17. Pioneer alleges that Selectric, a licensed Lutron

7    dealer, did not install the system correctly and failed to repair or replace the system. Lutron

8    and Selectric refused to provide Pioneer with a copy of the software necessary to access the

9    system, and Pioneer was unable to obtain parts and service from an independent service

10   organization. The FAC alleges that Lutron and Selectric have colluded to fix the market for

11   lighting control systems.

12                                         **DISCUSSION**

13         Defendants move to dismiss the claims pursuant to Federal Rule of Civil Procedure

14   12(b)(6). Dismissal is appropriate where the complaint lacks a cognizable legal theory, lacks

15   sufficient facts alleged under a cognizable legal theory, or contains allegations disclosing

16   some absolute defense or bar to recovery. *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696,

17   699 (9th Cir. 1988).

18         To survive dismissal for failure to state a claim, a complaint must contain more than

19   "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell*

20   *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must contain factual allegations

21   sufficient to "raise a right to relief above the speculative level." *Id.* While "a complaint need

22   not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to

23   relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022

24   (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when

25   the plaintiff pleads factual content that allows the court to draw the reasonable inference that

26   the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 667

27   (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a

28

sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal citations omitted). Similarly, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

## I.   Selectric's Motion to Dismiss

Selectric raises a number of challenges to Pioneer's claims. The Court will first consider Selectric's argument that the parties are subject to a binding arbitration clause, which bars all claims against Selectric. (Doc. 7 at 7–8; Doc. 19 at 2–4.)

### A.   Binding arbitration clause

The parties entered into a contract for Selectric to provide Pioneer with a Lutron lighting control system. The contract, a standard form contract used by Arizona contractors and architects, contains a Binding Dispute Resolution clause requiring "Arbitration pursuant to Section 15.4 of AIA Document A201-2007 (or) AZ-ROC proceedings."[2] (FAC, Ex.1.)

Written arbitration agreements are governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, which "embodies a clear federal policy in favor of arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Applying these principles, the Court finds that Pioneer's claims against Selectric are barred under the contract.

First, contrary to Pioneer's argument, the parties chose this option instead of, not in addition to, the option of litigation. In selecting a method for dispute resolution, the parties

---

[2] Pioneer already availed itself of the contract dispute resolution process by filing a complaint with the Arizona Registrar of Contractors ("AZ-ROC"), which "decided not to handle the matter and closed its file." (Doc. 14 at 9.)

checked the box for "Arbitration pursuant to Section 15.4 of AIA Document A201-2007 (or) AZ-ROC proceedings." (FAC, Ex. 1.) They left unchecked the box for "Litigation in a court of competent jurisdiction." (*Id.*) Therefore, Pioneer's claims are governed by the unambiguous terms of the dispute resolution clause.[3]

Pioneer contends that its anti-trust and fraud claims are not within the scope of the clause. (Doc. 14 at 9.) Pioneer offers no support for this proposition, and the Court rejects it.

Pioneer's anti-trust and fraud allegations "touch matters" covered by the contract. *See Filimex, L.L.C. v. Novoa Invs., L.L.C.*, CV-05-3792-PHX-SMM, 2006 WL 2091661, at *4–5 (D. Ariz. July 7, 2006). In *Filimex*, the plaintiff contended that the arbitration clause applied to its breach of contract claim but not to its claims for unfair competition and trademark infringement. *Id.* The court explained that it was the plaintiff's burden to establishing that the arbitration clause did not apply to these claims, a burden which it failed to meet. *Id.* (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)).

Here, Pioneer does not attempt to meet its burden of showing that the arbitration clause does not apply to its antitrust and fraud claims. (*See* Doc. 14 at 9.) Nor does the contract expressly limit the type of disputes subject to the arbitration process. Accordingly, the Court finds that all of Pioneer's claims against Selectric (Counts I–IV, VI–VIII) are barred by the contract's Binding Dispute Resolution clause.[4]

**B.    Claim against license bond**

Count V of the FAC alleges that RLI Insurance wrongfully denied payment against the license bond issued to Selectric. (FAC, § 36.) Selectric counters that the claim against

---

[3] As noted, even if the ADR provision could be considered ambiguous, the Supreme Court has liberally interpreted dispute resolutions provisions in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. at 24.

[4] In addition to relying on the Binding Dispute Resolution clause, Selectric argues that Plaintiff's fraud and antitrust claims are insufficiently pleaded. The Court will address these arguments in its discussion of Lutron's motion to dismiss.

RLI is time-barred under A.R.S. § 32-1152(E), which states that, "No suit may be commenced on the bond or for satisfaction from the cash deposit after the expiration of two years following the commission of the act or delivery of goods or rendering of services on which the suit is based." Selelectric argues that the start date for the statute of repose was June 1, 2010, the date Pioneer and Selectric entered into their contract, which is the only date alleged in the FAC. (Doc. 7 at 11.) Pioneer filed its initial complaint on November 12, 2013.

In its response to Selectric's motion to dismiss, Pioneer contends that June 1, 2010, is not the proper start date, because it is not the date on which Selectric performed its work. (Doc. 14 at 11.)

"[T]he statute of limitations defense . . . may be raised by a motion to dismiss ... [i]f the running of the statute is apparent on the face of the complaint." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). Even if the relevant dates alleged in the complaint are beyond the statutory period, the "complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Hernandez v. City of El Monte*, 138 F.3d 393, 402 (9th Cir. 1998) (quotation omitted). "Dismissal on statute of limitations grounds can be granted pursuant to Fed.R.Civ.P. 12(b)(6) only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999) (quotation omitted).

Based on these principles, the Court will not dismiss Count V. It does not appear beyond doubt that Pioneer cannot establish the timeliness of the claim.

## II.   Lutron's Motion to Dismiss

Lutron moves to dismiss Counts VII ("Aftermarket Monopoly"), VIII ("Price Fixing"), and IX ("Fraud") of the FAC. (Doc. 10.)

### A.   Antitrust Claims

Pioneer brings claims alleging aftermarket monopoly and price fixing under the Sherman Antitrust Act. Section 1 of the Sherman Antitrust Act prohibits conspiracies to

restrain trade, while § 2 prohibits the illegal monopolization of a market. 15 U.S.C. §§ 1, 2.

Count VII of the FAC alleges that Lutron and Selectric engaged in an aftermarket monopoly, in a per se violation of the Sherman Act:

> Lutron contracts, colludes and conspires with its dealers to retain control over the aftermarket sale, installation and service of its lighting control systems by, among other things: i) refusing to provide customers with the operating system template and the details of the database programming of the Lutron lighting control system purchased and installed at their specific home; ii) forcing consumers to enter service agreements with its licensed dealers for ongoing maintenance of their Lutron lighting control system; iii) refusing to transfer maintenance and repair service from one Lutron licensed dealer to another without high transfer or switching costs; and iv) establishing barriers to non-Lutron dealers' ability to provide aftermarket service and repairs to Lutron lighting control systems by refusing to sell Lutron parts to anyone except Lutron licensed dealers and by retaining possession and control of the databases installed in each consumers' home or business.

(FAC, ¶ 50.)

Pioneer further alleges that Lutron and Selectric engaged in these activities "for the purpose of fixing, maintaining, raising and stabilizing prices of Lutron lighting control system products, and to allocate the market for those products between its licensed dealers," and that their "actions are intended to and have resulted in artificially high prices for its [sic] services." (*Id.*, ¶¶ 51, 52.)

Count VIII alleges that Lutron and Selectric engaged in a price-fixing conspiracy in violation of the Sherman Act. (FAC, ¶ 56.) Specifically, Pioneer alleges that "Lutron and its licensed dealers, including Selectric, contracted, combined or conspired to fix, raise, maintain or stabilize prices and allocated customers in the lighting control systems market in the United States, the purpose and effect of which is to maintain supracompetitive prices for their products." (*Id.*) According to the FAC, "This conspiracy consists of a continuing, unlawful understanding and concert of action among Lutron and its licensed dealers, including Selectric to coordinate Lutron's prices," which has "foreclosed and restrained competition among Lutron's licensed dealers, as well as the lighting control system market as a whole." (*Id.*, ¶ 57.)

"[T]o state a valid claim under the Sherman Act, a plaintiff must allege that the defendant has market power within a 'relevant market.' That is, the plaintiff must allege both that a 'relevant market' exists and that the defendant has power within that market." *Newcal Indus., Inc. v. Ikon Office Solution,* 513 F.3d 1038, 1044 (9th Cir. 2008). To satisfy its burden, "Plaintiff must plead allegations regarding barriers to entry and the lack of ability by competitors to increase their share of the market." *Witt Co. v. RISO, Inc*., 948 F.Supp.2d 1227, 1244 (D.Or. 2013).

For a claim of monopolization, the relevant market consists of the "relevant geographic market" and the "relevant product market." *Newcal Indus. v. Ion Office Solution*, 513 F.3d 1038, 1044 n.3 (9th Cir. 2008); *see Brown Shoe Co. v. United States*, 370 U.S. 294, 336 (1962). A properly defined product market "includes a pool of goods or services that enjoy reasonable interchangeability of use and cross-elasticity of demand." *Oltz v. St. Peter's Cmty. Hosp.*, 861 F.2d 1440, 1446 (9th Cir. 1988); *see Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001) (explaining that the relevant product market includes "product use, quality, and description."). "Failure to identify a relevant market is a proper ground for dismissing a Sherman Act claim." *Tanaka*, 252 F.3d at 1063.

The FAC contains the following market allegations: "[Lutron] is one of the world's leading lighting control companies for both residential and commercial applications"; "[t]he lighting control systems market has few players with Lutron controlling a majority of the market share"; "Lutron distributes and services its products in Arizona through a network of exclusive dealers that are licensed and trained by Lutron. Only Lutron licensed dealers may purchase, install, and service Lutron residential lighting control systems"; "[t]he aftermarket for replacement parts, operating systems, and repair services for Lutron lighting control systems is controlled by Lutron through its network of licensed dealers." (FAC, ¶¶ 45–48.)

As clarified in its response to the motions to dismiss, Pioneer's claims of an aftermarket monopoly and price-fixing are based on the allegation that Lutron controls the secondary market for Lutron parts and servicing through a tie-in arrangement with its

1   licensed dealers. (Doc. 15 at 7–10.) For the reasons discussed next, Pioneer's tie-in
2   allegations fail to state a claim for a Sherman Act violation.

3          "Generally, a relevant market in a monopolization action cannot be limited to the
4   products of a single manufacturer." *Oce North America, Inc. v. MCS Services, Inc.*, 795
5   F.Supp.2d 337, 342 (D.Md. 2011) (citing *United States v. E.I. du Pont de Nemours & Co.*,
6   351 U.S. 377, 393 (1956)); *see International Logistics Group, Ltd. v. Chrysler Corp*., 884
7   F.2d 904, 908 (6th Cir. 1989) (holding that defendant could not be charged with antitrust
8   violations in connection with monopolization of its own brand of parts); *Apple, Inc. v.
9   Psystar Corp*., 586 F.Supp.2d 1190, 1198 (N.D.Cal. 2008) ("In general, a manufacturer's
10  own products do not themselves comprise a relevant product market . . . [A] company does
11  not violate the Sherman Act by virtue of the natural monopoly it holds over its own
12  product.") (quotation omitted). Moreover, under established principles of antitrust law,
13  Lutron had the right to exercise its independent discretion as to the parties it deals with.
14  *United States v. Colgate & Co.*, 250 U.S. 300, 307 (1919)

15         Pioneer relies on *Eastman Kodak Co. v. Image Technical Servs., Inc*., 504 U.S. 451
16  (1992), for its aftermarket tie-in claims. That case is readily distinguished and does not
17  support Pioneer's position.

18         Kodak manufactured and sold photocopiers and other equipment. It also sold service
19  and replacement parts for the equipment. *Id.* at 455. The plaintiffs, a group of independent
20  service organizations that serviced Kodak equipment, challenged Kodak's implementation
21  of new policies that made it more difficult for them to compete with Kodak in servicing
22  equipment. *Id.* They alleged that Kodak unlawfully tied the sale of service for Kodak
23  machines to the sale of Kodak-compatible parts, which were not compatible with
24  competitors' machines. *Id*. The Court held that in certain circumstances a single brand can
25  constitute a separate market, explaining that "because service and parts for Kodak equipment
26  are not interchangeable with other manufacturers' service and parts, the relevant market from
27  the Kodak equipment owner's perspective is composed of only those companies that service

28

1   Kodak machines." *Id.* at 482. The Court found that the single-brand aftermarket for parts and

2   service for Kodak equipment arose once customers had already purchased and were "locked

3   in" to Kodak photocopiers or equipment. *Id.*

4         Under *Kodak*, to state an illegal tying claim Pioneer must adequately allege (1) that

5   Lutron tied together the sale of two distinct products or services; (2) that Luton possessed

6   enough economic power in the tying product market to coerce its customers into purchasing

7   the tied product; and (3) that the tying arrangement affected a "not insubstantial volume of

8   commerce" in the tied product market. *Id.* at 461–62; *see Cascade Health Solutions v.*

9   *PeaceHealth*, 515 F.3d 883, 913 (9th Cir. 2008); *Rick–Mik Enters. v. Equilon Enters., LLC*,

10  532 F.3d 963, 971 (9th Cir.2008); *Witt*, 948 F.Supp.2d at 1242. Pioneer's allegations fall

11  short.

12        Pioneer does not allege that Lutron, as opposed to dealers like Selectric, actually

13  provides service or replacement parts for lighting systems in the alleged aftermarket. Instead,

14  it states that, "Only Lutron licensed dealers may purchase, install and service Lutron

15  residential lighting systems." (FAC, ¶ 47.) By contrast, Kodak provided service and sold

16  replacement parts in the "aftermarket," thereby competing with the independent service

17  providers. Nor does Pioneer allege that Lutron, like Kodak, implemented a new policy after

18  Pioneer's purchase of the system that locked Pioneer into Lutron's services.

19        Pioneer also fails to include any non-conclusory allegations concerning Lutron's

20  economic power or the effect of the tying arrangement on commerce. *See Sidibe v. Sutter*

21  *Health*, --- F.Supp.2d ----, 2013 WL 5956315, at *14 (N.D.Cal. 2013) (finding that tying

22  claims failed where allegations of market harm were "entirely conclusory"); *see also In re*

23  *eBay Seller Antitrust Litig.*, 545 F.Supp.2d 1027, 1033–34 (N.D.Cal. 2008) (explaining that

24  plaintiffs must plead a "pernicious effect on competition and lack of . . . any redeeming

25  value"); *In re Webkinz Antitrust Litigation*, 695 F.Supp.2d 987, 995 (N.D.Cal. 2010).

26        Pioneer's price-fixing allegations also fail. Again, the FAC does not contain

27  sufficient allegations of Lutron's market power or injury to competition, as required under

28

1   the Sherman Act. *See Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1202 (9th Cir. 2012)

2   ("Allegations that an agreement has the effect of reducing consumers' choices or increasing

3   prices to consumers does not sufficiently allege an injury to competition."). Merely alleging

4   a tying arrangement is insufficient. *Id.* at 1200. In this case, "the only alleged injury to

5   competition is increased prices and reduced consumer choice." *Orchard Supply Hardware*

6   *LLC v. Home Depot USA, Inc.*, 939 F.Supp.2d 1002, 1011 (N.D.Cal. 2013); *see Brantley*,

7   675 F.3d at 1200 ("Plaintiffs may not substitute allegations of injury to the claimants for

8   allegations of injury to competition.").

9       Pioneer has also failed to sufficiently allege an "agreement on price or price levels"

10  between Lutron and Selectric. *Business Electronics Corp. v. Sharp Electronics Corp.*, 485

11  U.S. 717, 735–36 (1988). The mere fact that Lutron and its dealers communicated about

12  prices does not constitute a Sherman Act violation. *Monsanto Co. v. Spray-Rite Serv. Corp.*,

13  465 U.S. 752, 762 (1984) (explaining that "the fact that a manufacturer and its distributors

14  are in constant communication about prices and marketing strategy does not alone show that

15  the distributors are not making independent pricing decisions").

16      **C.    Fraud**

17      Under Arizona law, to prove fraud a plaintiff must show: (1) a representation, (2) its

18  falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or ignorance of its truth,

19  (5) the speaker's intent that it be acted upon by the hearer in the manner reasonably

20  contemplated, (6) the hearer's ignorance of its falsity, (7) the hearer's reliance on its truth,

21  (8) the hearer's right to rely on it, and (9) the hearer's consequent and proximate injury. *See*

22  *Wells Fargo Credit Corp. v. Smith*, 166 Ariz. 489, 803 P.2d 900, 905 (1990).

23      Count IX of the FAC alleges that:

24      Lutron and Selectric . . . on or about May 15, 2010, intentionally made false
        representations to Pioneer by, among other things, intentionally withholding
25      the fact that: i) Pioneer would not be receiving a copy of its Lutron database;
        ii) after installation of the Lutron lighting control system, Pioneer would not
26      be able to obtain replacement parts or repairs from anyone other than a
        licensed Lutron dealer; and iii) if Pioneer wanted to change Lutron dealers
27      it would incur substantial switching costs.

28

Lutron contends that Pioneer has failed to allege fraud with the requisite particularity. Rule 9(b) of the Federal Rules of Civil Procedure provides that a party "must state with particularity the circumstances constituting fraud or mistake." Under Rule 9(b), a plaintiff "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv–Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986); *see Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged"); *Lancaster Cmty. Hosp. v. Antelope Valley Dist.*, 940 F.2d 397, 405 (9th Cir. 1991) (explaining that Rule 9(b) "requires a pleader of fraud to detail with particularity the time, place, and manner of each act of fraud, plus the role of each defendant in each scheme."); *see also Echols v. Beauty Built Homes, Inc.*, 132 Ariz. 498, 647 P.2d 629, 631 (1982) ("Fraud may never be established by doubtful, vague, speculative, or inconclusive evidence.").

Pioneer's fraud claim, consisting of vague and conclusory allegations, does not meet these criteria. First, the FAC refers to Lutron and Selectric together, without identifying each defendant's role in the alleged fraudulent scheme. (FAC ¶ 61.) "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007)

Next, the FAC's conclusory allegation that "Lutron and Selectric" made false representation to Pioneer on or about May 15, 2010, fails to detail with particularity the place and manner of the act of fraud. *See Silving v. Wells Fargo Bank, NA*, 800 F.Supp.2d 1055,1074–75 (D.Ariz. 2011) ("We have interpreted Rule 9(b) to mean that the pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.") Moreover, as Lutron notes, "there is no allegation that anybody from Lutron actually ever spoke to Pioneer about its product" or any allegation

1    that "there would be a reason for Pioneer to communicate with anybody other than Selectric

2    about the lighting control system." (Doc. 10 at 13.)

3         Because Count IX fails to allege fraud with sufficient particularity, it will be

4    dismissed.

5    **III.    Leave to Amend**

6         Pioneer requests leave to amend in the event the Court finds the fraud and antitrust

7    allegations insufficient. (Doc. 14 at 8, 10.) Lutron argues that amendment would be futile.

8         "Dismissal without leave to amend is improper unless it is clear, upon de novo

9    review, that the complaint could not be saved by any amendment." *Polich v. Burlington N.,*

10   *Inc.*, 942 F.2d 1467, 1472 (9th Cir.1991). Factors used to assess the propriety of leave to

11   amend include bad faith, undue delay, prejudice to the opposing party, futility of amendment,

12   and whether plaintiff has previously amended his complaint. *Allen v. City of Beverly Hills*,

13   911 F.2d 367, 373 (9th Cir. 1990). "[A] proposed amendment is futile only if no set of facts

14   can be proved under the amendment to the pleadings that would constitute a valid and

15   sufficient claim or defense." *Miller v. Rykoff–Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988).

16        At this point, the Court cannot say that there is no set of facts under which Pioneer's

17   antitrust and fraud claims could be proved. *See, e.g.*, *Vess*, 317 F.3d at 1107–08

18   ("[D]ismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice.").

19   Therefore, Luton's motion to dismiss will be granted without prejudice.

20                                **CONCLUSION**

21        For the reasons set forth above, Pioneer's claims against Selectric are barred by the

22   contract's Binding Dispute Resolution Clause. Counts  VII, VIII, and IX fail to state claims

23   on which relief can be granted. *See Twombly*, 550 U.S. at 561.

24        IT IS HEREBY ORDERED granting in part Defendant Selectric's Motion to Dismiss

25   (Doc. 7). Counts I–IV and VI–VIII are dismissed with prejudice.

26        IT IS FURTHER ORDERED granting Defendant Lutron's Motion to Dismiss Counts

27   VII, VIII, and IX, with leave to amend.

28
                                 - 12 -

1        IT IS FURTHER ORDERED that Plaintiff Pioneer shall file an amended complaint

2   no later than July 14, 2014.

3        DATED this 24th day of June, 2014.

4

5                                        Paul G. Rosenblatt
                                         United States District Judge
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28